UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-12552-GAO

DONALD SULLIVAN, individually and on behalf of others similarly situated,
Plaintiff,

v.

GALLERY AUTOMOTIVE GROUP, LLC and YUSUKE MIKI,
Defendants.

OPINION AND ORDER
July 25, 2017

O'TOOLE, D.J.

The plaintiff, Donald Sullivan, brought this putative class action against the defendants, Gallery Automotive Group, LLC and Yusuke Miki, in Plymouth County Superior Court. The defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The plaintiff now moves to remand, contending that the case does not satisfy the amount-in-controversy requirement for this Court to exercise diversity of citizenship jurisdiction under § 1332(a).

**I.    Relevant Factual Background**

According to the plaintiff's allegations, Gallery Automotive Group operates multiple car dealerships in Massachusetts. Yusuke Miki is a manager at the company. In December 2014, the plaintiff was hired as a car salesperson compensated by draw pay and commissions. While a salesperson, he "worked more than 40 hours in multiple workweeks," including "more than 45 hours . . . in some workweeks." (Notice of Removal, Ex. A ¶¶ 11–12 (dkt. no. 1-1).) "At no time" was he compensated at a rate of one and one half times his regular rate of pay for the hours he worked over forty per week. (Id. ¶ 14.)

In April 2016, the plaintiff was promoted to the position of financial services manager responsible for selling automobile financial products to customers. He continued to be compensated by draw pay and commissions. While a manager, he worked "more than 40 hours in multiple workweeks," including "more than 60 hours . . . in some workweeks." (Id. ¶¶ 18–19.) "At no time" was he compensated at a rate of one and one half times his regular rate of pay for the hours worked in excess of forty per week. (Id. ¶ 21.) The pay slips issued by the defendants failed to list his hourly rate or actual number of hours he worked per week. Additionally, the defendants failed to pay him $8,710.27 in commission earned from the sale of automobile financial products in August and September 2016, as well as for four paid holidays.

In October 2016, the plaintiff brought this suit on behalf of himself and others similarly situated, alleging class claims of non-payment of wages in violation of Mass. Gen. Laws ch. 151, §§ 1A, 1B (Count I), non-payment of wages in violation of Mass. Gen. Laws ch. 149, §§ 148, 150 (Count II), and failure to maintain proper payroll records in violation of various state laws and regulations (Count III), as well as separate claims by Sullivan as an individual for non-payment of wages in violation of Mass. Gen. Laws ch. 149, §§ 148, 150 (Count IV), breach of contract (Count V), and unjust enrichment/quantum meruit (Count VI). The complaint does not include a claim for a specific amount of damages.[1]

## II.   Discussion

Federal courts have jurisdiction over civil actions arising under state law "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

---

[1] The civil action cover sheet in the state court record filed with this Court does not include a complete statement of damages as it was likely cut off in processing. (See State Court R. 49 (dkt. no. 11).) The defendants report that it states that the claim is "class wide damages > $25,000," (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Remand 2 (dkt. no. 16) (hereinafter "Defs.' Opp'n Mem.")), an assertion that by itself is insufficient to establish jurisdiction.

. . . citizens of different States." 28 U.S.C. § 1332(a). "The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case." Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009) (citing In re New Motor Vehicles Canadian Exp. Antitrust Litig., 552 F.3d 6, 14 (1st Cir. 2008). Therefore, in a removal action, the defendant bears the burden of showing the federal court's jurisdiction so as to make removal proper. See id. (citing Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).

It is undisputed in this case that the parties are of diverse citizenship. The sole issue is whether the $75,000 amount in controversy has been met.[2] The parties do not squarely address the proper burden a removing defendant bears in demonstrating the amount in controversy, and at times use different terms, but it appears that the plaintiff agrees that the appropriate benchmark is no more than a "reasonable probability." (See Mem. in Supp. of Pl.'s Mot. to Remand 3, 4 (dkt. no. 13).) The defendants use this language as well, although not consistently. Consequently, I assume for the present purposes that the defendants must demonstrate a reasonable probability that the amount in controversy meets the jurisdictional minimum.

In support of their claim that there is a reasonable probability that the plaintiff's damages exceed $75,000, the defendants assert that the plaintiff's unpaid overtime claims alone would exceed the threshold when trebled pursuant to state law, that the plaintiff's commission allegations are merely examples of all potential claims for commissions so that the total of all such claims would be higher than the amount stated, and that the attorneys' fees likely to be incurred through the duration of the litigation would push the total damages beyond the jurisdictional amount. On examination, these contentions appear to be are based largely on unsupported speculations.

---

[2] Although this is a purported class action, the defendants do not contend the amount in controversy exceeds $5 million as required for federal jurisdiction under the Class Action Fairness Act.

First, in order to assign a dollar figure to the plaintiff's unspecified overtime claims, the defendants assume that the plaintiff worked an average of 12.53 hours of overtime per week for his eighty-eight[3] weeks of employment, and multiply that figure by a weighted average overtime rate of $14.04 to contend that the damages would "eclipse $75,000 after mandatory trebling" under Mass. Gen. Laws ch. 149, § 150. (Defs.' Opp'n Mem. 6.) However, the assumption that the plaintiff worked an average of 12.53 extra hours of overtime per week is not only hypothetical, but it is also belied by the defendants' own payroll records which reveal a lower average.[4] (See Reply in Supp. of Pl.'s Mot. to Remand 2 (dkt. no. 19).)

Second, the defendants' contention that the plaintiff's two specific allegations regarding unpaid commissions are mere examples of other potential—but unspecified—commissions rests on a contorted reading of the complaint. In paragraph 27 of his complaint, the plaintiff describes the commission structure for his compensation plan, illustrating "[f]or example" how his commission would be derived in two situations depending on profit and number of products sold per customer. (Notice of Removal, Ex. A ¶ 27.) The defendants borrow the term "example" from paragraph 27 and apply it to subsequent paragraphs which allege unpaid commissions in the amount of $8,015.50 and $694.77 in order to argue that they understand the two claims to be "*examples* of unpaid commissions." (Defs.' Opp'n Mem. 7 (emphasis in original).) However, there

---

[3] The complaint does not allege a termination date, but both parties appear to agree that the plaintiff worked until the end of August 2016.

[4] The plaintiff contends that the records yield an average of only 7.67 hours of weekly overtime. Contrary to the defendants' argument that the court may not consider the payroll records because they were produced to the plaintiff after the case was removed, it is appropriate to consider the payroll records documenting the plaintiff's pre-suit work and salary history as evidence of what was known about likely damages at the time of removal. It is worth noting, however, that the plaintiff alleges in his complaint that the defendants issued pay slips that failed to list hourly rates or actual numbers of hours worked per week. Consequently, it is unclear at this stage how reliable the payroll records might be.

is no indication in the complaint that there are other instances of unpaid commissions for the plaintiff, and the plaintiff in his papers says he does not claim any. Without more, the defendants' contention regarding an amount of unpaid commissions is merely speculative.

Third, although a potential award of attorneys' fees may properly be considered in determining the amount in controversy when, as here, they are provided for by statute, see Mass. Gen. Laws ch. 149, § 150; Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001), the defendants have not shown that it is reasonably probable in this case that attorneys' fees would boost the damages amount beyond the $75,000 threshold.[5] Using the plaintiff's claim that his trebled individual damages would amount to $55,908.93, the defendants assert that a fee award of $19,091.07 or more would take the total recovery to the $75,000 statutory requirement. The math is right, but the assertion rests only on a hypothesis that that sum would, in fact, be found to represent a "reasonable" award[6] for success on the individual claims only. An award in the supposed amount would slightly exceed one-third of the damage recovery.[7] It is *possible* that an award could equal or exceed the posited amount, but there is no basis in this record to conclude that a "reasonable" fee in that (or any other particular amount) is reasonably *probable*, which is the standard the parties agree is applicable.

---

[5] I do not accept the plaintiff's contention that attorneys' fees should be apportioned across a possible class. Whether a class would ultimately be certified is speculative at this point, as is any determination of the number of class members. The plaintiff has asserted individual claims on his own behalf regardless of the certification of a class, and success on those claims would justify an award of attorneys' fees to him personally. Determining whether the amount in controversy requirement has been satisfied is best assessed by considering the claims that are certain to be adjudicated, the individual claims, rather than those that might be.

[6] A successful employee plaintiff is entitled to recover "reasonable attorneys' fees." Mass. Gen. Laws ch. 149, § 150.

[7] $19,091.07 / $55,908.93 = 0.3415.

Federal courts have a particular responsibility to "police the border" of their jurisdiction, Spielman, 251 F.3d at 7 (citation omitted), and any doubts as to the propriety of removal should construed against the party seeking removal, Rossello-Gonzalez v. Calderon Serra, 398 F.3d 1, 11 (1st Cir. 2004) (citing Shamrock Oil & Gas. Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). Accordingly, in light of the speculative nature of the defendants' arguments, I conclude that the defendants have failed to demonstrate a reasonable probability that the amount in controversy exceeds $75,000 for the plaintiff's individual claims.

### III. Conclusion

For the foregoing reasons, the plaintiff's Motion to Remand (dkt. no. 12) is GRANTED as to an order of remand. Although the plaintiff's motion is meritorious, I do not find that there was no objective basis for the defendants to remove the case, see Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)), and therefore the plaintiff's request for attorneys' fees incurred as result of the removal is denied.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge